J-S13015-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: B.Z., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.E., NATURAL FATHER | No. 1638 WDA 2014 |

Appeal from the Order September 12, 2014
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s): TPR 038-14

BEFORE: BENDER, P.J.E., MUNDY, J. and STABILE, J.

MEMORANDUM BY BENDER, P.J.E.:          **FILED MARCH 23, 2015**

D.E. (Father) appeals from the order entered on September 12, 2014, that granted the petition filed by the Allegheny County Office of Children, Youth and Families (CYF) and involuntarily terminated Father's parental rights to B.Z. (Child) (born in July of 2011) pursuant to 23 Pa.C.S. § 2511(a)(2), (5) and (b). We affirm.

CYF first became involved with Child shortly after his premature birth that occurred as a result of A.Z.'s (Mother)[1] drug use. Father's paternity was established by genetic testing and an acknowledgement of paternity. On September 1, 2011, Child was adjudicated dependent at which time both Mother and Father were incarcerated. Thereafter, permanency review hearings were conducted approximately every six months and resulted in Child remaining in placement. At the permanency review hearing held on

_____

[1] Although Mother's parental rights were involuntarily terminated at the same time that Father's rights were terminated, she has not appealed that determination and is not a party to this appeal.

March 11, 2013, the court found Father ready for reunification with Child, who was then returned to Father's custody. However, by June 11, 2013, CYF was granted an emergency custody authorization because Father had been re-arrested. Child was removed from Father's custody and placed in foster care. Permanency review hearings were held in September and December of 2013, and in April and July of 2014. Child remained in placement and Father remained incarcerated.

On March 6, 2014, CYF petitioned for the involuntary termination of both parents' parental rights. On September 16, 2014, a full hearing was held. Father attended and was represented by counsel. Testimony was heard from Marci Boger, a CYF caseworker, Brian Helfrich, a supervisor from the Pennsylvania Board of Probation and Parole, Neil Rosenblum, Ph.D., and Father. In addition to the above-noted factual and procedural history of this matter, the court set forth the following findings relating to Father:

32. According to his parole supervisor, Father's earliest possible release date is May 2015.

33. Father has a lengthy criminal history record, dating back to a DUI conviction in 1996. His felony convictions include burglary, criminal conspiracy, theft by unlawful taking, escape, and criminal trespass.

34. In addition to receiving multiple sentences that included jail time, Father has violated the terms of his probation and had probation revoked multiple times.

35. Father has been out of jail or prison for only six months of Child's life.

36. Child has been in Father's care for only three months of Child's life.

37. Father acknowledges that his abuse of drugs and alcohol has been the catalyst for much of his criminal behavior. He testified he has stolen to finance his drug habit and has committed many of his crimes while high.

38. Among other things, Father's Family Service Plan goals have included recovery from substance abuse, parenting, visitation with Child, and refraining from criminal activity.

39. After his release from jail in late 2012, Father completed a drug and alcohol treatment program at Cove Forge and has attended NA meetings.

40. Despite this, Father has never demonstrated a sustained period of sobriety outside of jail, prison, or a structured treatment program.

41. Father did, however, fulfill his Family Service Plan goal related to parenting skills. Prior to accepting custody of Child in early 2013, Father participated in a parenting education program through Arsenal.

42. Regarding the goal of visitation with Child, Father has exercised every opportunity to visit with Child; however, at most, Father is only permitted two visits per month while he is incarcerated.

Trial Court's Findings of Fact (TCFOF), 11/26/14, at ¶¶ 32 – 42.

The court also set forth the following facts as they relate to Child's needs and welfare:

43. Child was placed in his current foster home on June 11, 2013. Child's foster parents desire to adopt him.

44. On June 5, 2014 Dr. Neil Rosenblum conducted an interactional evaluation of Child with his foster parents.

45. Dr. Rosenblum described Child as having a strong primary attachment to his foster parents. Dr. Rosenblum observed Child

interacting well with the foster parents, who provide him with the secure and supportive environment he needs.

46. Dr. Rosenblum explained that because of Child's history of changes in placement he is at risk for development of an attachment disorder. Child needs the opportunity to feel secure, stable and safe in one home. Dr. Rosenblum opined that adoption by his foster parents will best meet Child's developmental needs.

47. Although Dr. Rosenblum did not have the opportunity to observe Child with Father, Dr. Rosenblum concluded that it is impossible for Child to have developed a primary attachment to Father given the short time Child was in Father's care and the limited visitation Child has had with Father while Father has been incarcerated.

48. While Dr. Rosenblum acknowledged that Child is familiar with Father, he distinguished familiarity from having a primary attachment.

49. Dr. Rosenblum opined that it is unlikely that Child would have a significant adverse reaction if Child were not able to continue to see Father.

50. Dr. Rosenblum opined that it would be very risky to Child's development to consider reunification with Father upon Father's release from incarceration. Dr. Rosenblum noted that given Father's history there is no guarantee that he will be able to maintain a secure and stable lifestyle. Dr. Rosenblum opined that it would take at least a year from the time of release to assess Father's progress. In light of Child's need for permanency, that timeframe would be too late.

51. This Court has had the opportunity to observe Child interacting with Father for brief visits at the conclusion of Court on April 8, 2014 and July 16, 2014. It is apparent to this Court from those brief interactions that Child knows Father and has a positive relationship with him. However[,] this Court accepts Dr. Rosenblum's opinion that Child's relationship with Father does not and cannot amount to a true parent/child bond.

TCFOF, at ¶¶ 43 – 51.

According to these findings, the court concluded that CYF had proven that Father's parental rights should be terminated pursuant to 23 Pa.C.S. § 2511(a)(2), (5) and (b). Father filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). Father now raises the following issue for our review:

> Did the trial court abuse its discretion and/or err as a matter of law in concluding that termination of [Father's] parental rights would serve the needs and welfare of the [C]hild pursuant to 23 Pa.C.S. § 2511(b)?

Father's brief at 5.

Our standard of review regarding orders terminating parental rights is as follows:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005). In termination cases, the burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *Id.* at 806. We have previously stated:

> The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to

enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*In re J.L.C. & J.R.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003).

The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result. *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa. Super. 2003). Additionally, this Court "need only agree with [the trial court's] decision as to any one subsection in order to affirm the termination of parental rights." *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004).

The termination of parental rights is controlled by 23 Pa.C.S. § 2511. Under this statute, the trial court must engage in a bifurcated process in which it initially focuses on the conduct of the parent under Section 2511(a). *See In the Interest of B.C.*, 36 A.3d 601 (Pa. Super. 2012). If the trial court determines that the parent's conduct warrants termination under Section 2511(a), it must then engage in an analysis of the best interests of the child under Section 2511(b). *See id.*

In the instant case, Father does not challenge the trial court's analysis as it relates to his conduct under Section 2511(a); rather, he limits his

argument to the trial court's analysis of the best interests of Child under Section 2511(b), which provides, in pertinent part:

> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S. § 2511(b).

Pursuant to Section 2511(b), the trial court must take into account whether a natural parental bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship. *In re C.S.*, 761 A.2d 1197, 1202 (Pa. Super. 2000) (*en banc*).

> In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa.Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into needs and welfare of the child." In addition, we instructed that the orphans' court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.* However, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *In re K.Z.S.*, 946 A.2d 753, 763 (Pa.Super. 2008).

> While a parent's emotional bond with his or her child is a major aspect of the Subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child. The mere existence of an emotional bond does not preclude the termination of parental rights. Rather, the orphans' court must examine the status of the bond to determine whether its termination "would destroy an existing, necessary and beneficial relationship." As we explained in *In re A.S.*, 11 A.3d 473, 483 (Pa. Super. 2010):

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011) (citation omitted).

Father recognizes that the trial court "acknowledged the positive relationship between [Father] and B.Z." Father's brief at 12 (citing Trial Court Opinion (TCO), 11/26/14, at 2-3). However, he contends that the court erred by relying "on [Father's] incarceration as well as Dr. Rosenblum's assessment of the foster parents' relationship with the [C]hild as the bases for its needs and welfare conclusion." *Id.* Essentially, Father argues that this is a type of balancing test that is not appropriate for the court to employ in determining "what would best serve the needs and welfare of the Child." *Id.* (citing *In Re Coast*, 561 A.2d 762 (Pa. Super. 1989)). We disagree. Rather, we concur in the reasoning provided by the trial court in its opinion that supports the termination of Father's parental rights.

Specifically, in addressing its reasons for concluding that the termination was appropriate under the circumstances here, the court stated:

> In this matter[,] Child has lived with his pre-adoptive foster parents for over a year, has developed a strong primary attachment to the foster parents, and is thriving in their care. Child has lived in Father's care for only three months of Child's entire life and has had only limited visits with Father since his re-incarceration in May 2013. Dr. Rosenblum's testimony at the

hearing supports this Court's conclusion that Child does not and cannot have a true parent-child bond with Father. Although this Court acknowledged that Child has a positive relationship with Father, Dr. Rosenblum's testimony supports the conclusion that terminating Father's parental rights will not have a detrimental effect on Child. As Dr. Rosenblum testified, adoption by the foster parents will provide Child the opportunity he needs to feel secure, stable, and safe in one home and will best meet Child's developmental needs.

TCO, at 2-3.

Based upon our review of the record, we conclude that the trial court's findings and conclusions are supported by the evidence presented. Accordingly, we determine that the trial court did not abuse its discretion in terminating Father's parental rights to Child pursuant to section 2511(b).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/23/2015

- 9 -